**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2005-5, ASSET-BACKED CERTIFICATES, SERIES 2005-5, | § § § § § § | SA-24-CV-00381-XR |
| *Plaintiff* | § § | |
| -vs- | § § § | |
| THOMAS CLARKE II, TRAVIS CLARKE, | § § § | |
| *Defendants* | § | |

## ORDER

On this date, the Court considered Plaintiff Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2005-5, Asset-Backed Certificates, Series 2005-5's ("Wells Fargo") Motion for Default Judgment. ECF No. 17. Upon careful consideration the Court issues the following order.

### BACKGROUND[1]

In August 2005, Thomas A. Clarke executed a note for a Home Equity Adjustable Rate Note (Non-Recourse) ("Note") in the principal amount of $96,000.00 bearing an interest rate of 9.600% per annum and originally payable to Option One Mortgage Corporation as lender on a loan secured by the real property commonly known as 122 Clubhill Drive, San Antonio, Texas, 78228, ("Property"), and more particularly described as:

> LOT 2, BLOCK 17, NEW CITY BLOCK 12367, HILLCREST SUBDISION, UNITE 2, AN ADDITION TO THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF,

---

[1] The facts in this section are drawn from the well-pleaded allegations in Plaintiff's complaint, which the Court must accept as true. *See Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

RECORDED IN, VOLUME 3535, PAGE 234, DEED AND PLAT RECORDS OF
BEXAR COUNTY, TEXAS.

*See* ECF No. 1 at ¶ 16; *Id*. at § 13; ECF No. 1-1 at 2–6. Contemporaneously, Thomas A. Clarke

and his wife, Carolyn M. Clarke executed a Deed of Trust ("Security Instrument" and together

with the Note, "Loan Agreement"), as grantor, granting Option One Mortgage Corporation, its

successors and assigns a security interest in the Property. The Security Instrument (ECF No. 1-1

at 10–19) was recorded in the Official Public Records of Bexar County, Texas in Volume 11605,

Page 1381 as Instrument No. 20050196827 on August 26, 2005. *See* ECF No. 1 at ¶ 17.

Through an assignment (ECF No. 1-1 at 28), Plaintiff became holder of the Note and

beneficiary of the Security Instrument. It is also a mortgagee of the Loan Agreement, as defined

by Texas Property Code § 51.001(4). *See* ECF No. 1 at ¶ 19.

On or about August 26, 2021, Carolyn M. Clarke passed away. An application to Probate

Will was filed on September 29, 2021, in the Probate Court No. 1 of Bexar County, Texas, under

Cause No. 2021PC03767. ECF No. 1 at ¶ 20. On October 19, 2021, the Probate Court entered an

Order Admitting Will to Probate and Appointing Thomas A. Clarke as the Independent Executor.

ECF No. 31–32.  According to the provisions of the Will, Carlolyn M. Clarke devised all of her

property, including any title interest in the Property, to Thomas A. Clarke. ECF No. 1-1 at 35–42.

On or about October 21, 2023, Thomas A. Clarke passed away.[2] No probate matter was

opened. In accordance with Texas Estates Code §§ 101.001(b) and 101.051, his heirs acquired all

of his interest in the Property immediately upon his death,—subject to the Loan Agreement debt

owed to Plaintiff. *See* ECF No. 1 at ¶ 21. Decedent's heirs are each made a party in this proceeding.

---

[2] Hereafter Thomas A. Clarke is referred to as Decedent. Although Plaintiff has not provided Decedent's death
certificate, the complaint alleges that Decedent passed away on or about October 21, 2023. ECF No. 1 at ¶ 21. The
Court may accept this well-pled allegation as true. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Chase*, No. 5:19-CV-229-M-
BQ, 2020 WL 5048154, at *6 (N.D. Tex. Aug. 4, 2020) (Bryant, J.), *adopted by* 2020 WL 5038612 (N.D. Tex. Aug.
26, 2020) (Lynn, C.J.).

Defendant Thomas Clarke II is an heir and son of the Decedent. Defendant Travis Clarke is an heir and son of the Decedent. ECF No. 1 at ¶¶ 5–6.

Under the terms of the Loan Agreement, the Borrowers were required to pay when due the principal and interest on the debt evidenced by the Note, as well as any applicable charges and fees due under the Note. *See* ECF No. 1 at § 23; ECF No. 1-1 at 13.

The Loan Agreement is currently past due for the May 1, 2023, payment and all subsequent monthly payments. See ECF No. 1 at ¶ 24. A notice of Default was sent via certified mail to Borrowers at the Property address and alternate addresses 8026 Vantage Dr. 105, San Antonio, Texas 78230 and 5802 W. Interstate 10, San Antonio, Texas 78201, in accordance with the Loan Agreement and the Texas Property Code on November 8, 2023. *See id.*; ECF No. 1-1 at 44–55.

About one month after sending the Notice of Default, Plaintiff sent a Notice of Acceleration of Loan Maturity via certified mail to the Property's address and the alternate addresses 8026 Vantage Dr. 105, San Antonio, Texas 78230 and 5802 W. Interstate 10, San Antonio, Texas 78201, in accordance with the Loan Agreement and the Texas Property Code. *See* ECF No. 1 at ¶ 24; ECF No. 1-1 at 57–68.

Invoking diversity jurisdiction, Plaintiff then sued Defendant Thomas Clarke II and Defendant Travis Clarke for, among other relief, a declaration that it is entitled to non-judicially foreclose on the Property. *See* ECF No. 1. Travis Clarke was served on April 19, 2024, via personal service at 200 North Comal Street, San Antonio, Texas 78207. ECF No. 5. Thomas Clarke II was served on August 30, 2023, via substituted service by posting at 131 Spaatz Street, San Antonio, Texas 78211. ECF No. 11. Despite being served with a summons and copy of the complaint, neither Defendant has answered or otherwise appeared in this case. Neither Defendant is on active-duty military status. Exhibit A-1 (ECF No. 17-1 at 5–12).

Upon Plaintiff's request (ECF No. 12, 15), the Clerk entered a default against Defendant Travis Clarke (ECF No 13) and Thomas Clark II (ECF Nos. 16). Plaintiff now moves for a default judgment against both Defendants. Defendants have not responded.

## DISCUSSION

### I.    Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering a motion for default judgment, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether the complaint sets forth facts sufficient to establish that the plaintiff is entitled to relief, and (3) what form of relief, if any, the plaintiff should receive. *United States v 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). The Court examines each factor in turn.

### II.    Analysis

#### A.    Jurisdiction

As an initial matter, "when entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over

4

the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

### 1. Subject Matter Jurisdiction

The Court has an affirmative duty to look into its subject matter jurisdiction. *Sys. Pipe & Supply, Inc.*, 242 F.3d at 324. Wells Fargo seeks nonjudicial foreclosure of the lien and declaratory judgment.[3]

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), which provides that "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (2) citizens of a State and citizens or subjects of a foreign state [other than lawful permanent residents of the United States domiciled in the same State]." For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1258 (5th Cir. 1988). The party asserting federal jurisdiction must "distinctly and affirmatively allege" the citizenship of the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

When determining the citizenship of the real parties in interest for purposes of diversity jurisdiction, it is the citizenship of the trustee which controls, not the citizenship of the beneficiaries of the trust. *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 464–66 (1980); *Mfrs. and Traders Tr. Co. v. HSBC Bank USA, N.A.*, 564 F. Supp. 2d 261, 263 (S.D.N.Y. 2008). Wells Fargo is a national banking association which is chartered and has its main office in South Dakota. In *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), the Supreme Court held that a national bank is a citizen of the state where its main office, as designated in its articles of association, is

---

[3] The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), does not itself provide a basis for federal jurisdiction nor does it create a substantive cause of action. 28 U.S.C. § 2201(a); *see Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

located. *Wachovia Bank, N.A.*, 546 U.S. at 307; *see* U.S.C. § 1348 (2006). For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

Wells Fargo asserts that Thomas Clarke II and Travis Clark are citizens of Texas, and that Wells Fargo—as a national banking association with its main office in South Dakota—is a citizen of South Dakota. *See* ECF No. 1 at ¶¶ 9–10. Thus, there is complete diversity of citizenship.

The amount-in-controversy requirement is also satisfied. "In actions seeking declaratory or injunctive relief the amount in controversy is measured by the value of the object of the litigation." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983). The Fifth Circuit has held that when the right to the property is at issue, the value of the property controls the amount in controversy. *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961); *see also Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (*Waller* extended to a suit seeking injunctive relief to prevent foreclosure). The Bexar County Central Appraisal District values the Property at $185,450.00. ECF No. 1 at ¶ 14.

Because there is complete diversity between the parties and the amount in controversy exceeds the jurisdictional amount, the Court concludes that it has subject matter jurisdiction over Wells Fargo's claims.

### 2. Personal Jurisdiction

This Court also has personal jurisdiction over the parties to this case, as Plaintiff has properly effected service of process on Defendant Thomas Clarke II and Defendant Travis Clarke in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over

a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* Fed. R. Civ. P. 4(c)(1), (m).

Here, as to Defendant Travis Clarke, Plaintiff filed a return of service, in which the process server, Dionicio Aldape, declared under penalty of perjury that a copy of the summons and complaint was personally served on Travis Clarke at 200 North Comal Street, San Antonio, Texas 78207, at 12:28 p.m. on Friday, April 19, 2024. ECF No. 5.

As to Defendant Thomas Clarke II, Plaintiff filed a motion for substitute service on August 19, 2024, which the Court granted on August 20, 2024. On September 3, 2024, Plaintiff filed a return of service, in which the process server, Beatrice Valdez of Watkins Investigations, LLC, filed a sworn affidavit which provided that Thomas Clarke II was served on August 30, 2024, via substitute service where the summons and complaint was secured to the front gate of 131 Spaatz Street, San Antonio, Texas 78211, Defendant Thomas Clarke II's usual place of abode. ECF No. 11.

**B.  Liability**

**1.  Default is Procedurally Proper**

Six factors inform whether default is procedurally warranted: "[(1)] whether material issues of fact are at issue, [(2)] whether there has been substantial prejudice, [(3)] whether the grounds for default are clearly established, [(4)] whether the default was caused by a good-faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would

think itself obliged to set aside the default upon the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (numeration added).

A default judgment against Defendants is procedurally proper. First, Defendants have not filed a responsive pleading, so there are no material facts in dispute. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.").  *See also* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

Second, considering the prejudice factor, Defendants' failure to appear and respond has ground the adversarial process to a halt, prejudicing Wells Fargo's interest in pursuing its claims for relief and frustrating its recovery. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (citation and quotation marks omitted).

Third, the grounds for default are "clearly established" since, throughout this case, neither Defendant has responded to the complaint or Wells Fargo's motion. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (explaining that default judgment is appropriate where the defendants are totally unresponsive and the failure to respond is willful, as reflected by the parties' failure to respond to the complaint or the motion for default judgment).

Fourth, there is no evidence before the Court suggesting that the Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, Travis Clarke has had over one year and Thomas Clarke II has had eight months to respond to Wells Fargo's claims or otherwise appear in this matter since being served with Wells Fargo's complaint. Any purported harshness of a default judgment is mitigated by the Defendants'

inaction for this time period. *United States v. Rod Riordan, Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018).

Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by the Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds that it is appropriate to exercise its discretion to grant default in this matter.

### 2. Default is Substantively Warranted

The Court now looks to the substantive merits of Plaintiff's claims against Defendants. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact [and] is concluded on those facts by the judgment . . . ." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206). Although the Court must accept the plaintiff's well-pleaded facts as true, the Court then asks whether there is a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206; see also 10A Wright, Miller et al., FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). In other words, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In conducting this analysis, the Court draws "meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).

Wells Fargo seeks a declaration that it is entitled to foreclose on the Property pursuant to the Security Instrument and Texas Property Code § 51.002.

Under Texas law, a mortgagee may either sell property by nonjudicial foreclosure pursuant to express powers granted in a deed of trust or bring a judicial-foreclosure action. See TEX. PROP. CODE § 51.002(a) (describing procedures for nonjudicial foreclosure under power of sale conferred by deed of trust). To foreclose under a security instrument with a power of sale in Texas, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50 (a)(6) of the Texas Constitution; (3) defendants are in default under the note and security instrument; and (4) defendants received notice of default and acceleration. *Huston v. U.S. Bank. Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013) (citing Tex. Prop. Code § 51.002).

Wells Fargo has established each of the required elements for foreclosure. Decedent executed a Note in the principal amount of $96,000.00, secured by the Property. ECF No. 1 at § 16; Pl. Comp. Exhibit A (ECF No. 1-1 at 2–4). Concurrently, Decedent and his Spouse, Carolyn M. Clarke, executed the Deed of Trust (Deed of Trust (security instrument) along with Note, "Loan Agreement"). Pl. Comp. Exhibit B (ECF No. 1-1 at 10–19). Originally payable to Option One Mortgage Corporation, Plaintiff is the current holder of the blank endorsed Note pursuant to an assignment. *See* Exhibit C (ECF No. 1-1 at 28). The debt is secured by a valid lien because the Security Instrument was recorded in the official public records of Bexar County, Texas in Volume 11605 Page 1381. *See* ECF No. 1 at ¶ 17. Plaintiff asserts the Loan Agreement fell into default because of the borrowers' failure to abide by the terms and make required payments. *See id*. at ¶ 24. Finally, the notice of default and notice of acceleration were properly sent. Pl. Comp. Exhibit F (ECF No. 1-1 at 45–55), Pl. Comp. Exhibit G (ECF No. 1-1 at 58–68). After Defendants inherited the property, they did not remedy the default. *See id*. at ¶ 25.

### C. Wells Fargo is Entitled to Relief

Finally, the Court must determine what relief should be awarded to Plaintiff. Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED R. CIV P. 54(c).  Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without evidentiary hearing). But where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is unnecessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

Plaintiff does not seek monetary damages against Defendants. ECF No. 17 at 6. Instead Plaintiff seeks the following relief: (1) judgment against Defendants for court costs; (2) judgment against Defendants for reasonable attorneys' fees as a further obligation owed under the Note and Security instrument; (3) judgment declaring that Plaintiff is the owner and holder of the Note with standing to enforce the Security Instrument; (4) judgment against Defendants declaring that the following are secured by the Security Instrument on the Property: (a) the outstanding balance of the Note; (b) prejudgment interest; (c) post-judgment interest from the date of judgment until paid; and (d) costs of court; (5) judgment against Defendants declaring that Plaintiff, its successors and assigns, may proceed with non-judicial foreclosure of the Property pursuant to the Security Instrument and the Texas Property Code. *Id*.

### 1. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of an actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

A district court considering a declaratory judgment action must engage in a three-step inquiry, determining: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holms County*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

### i.  Justiciability

The DJA does not create a substantive cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Rather, "[a] declaratory judgment action is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08–CV–1658–D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quoting *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990)). "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit Alliance*, 212 F.3d at 896 (citations omitted). "The 'actual controversy' required under 28 U.S.C. § 2201(a) 'is identical to the meaning of "case or controversy" for the purposes of Article III.'" *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (quoting *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)).

The Court concludes that Wells Fargo's request for declaratory relief is justiciable because Wells Fargo owns and holds the Loan Agreement, which is in default, that is secured by the

Property inherited by the Defendants. Because the parties "have opposing interests that affect their respective rights and obligations, an actual controversy exists." *U.S. Bank Tr. Nat'l Ass'n as Tr. of Tiki Series IV Trust v. Walden*, 124 F.4th 314, 323 (5th Cir. 2024). Accordingly, "[t]his controversy requires judicial resolution to determine if [Wells Fargo] can foreclose on the property, making the dispute ripe." *Id*.

### ii.   Requisite Authority

"[A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. §] 2283." *Sherwin-Williams Co.*, 343 F.3d at 388 n.1 (citations omitted).

Nothing before the Court establishes the existence of a similar, parallel state court action relating to this cause. With no evidence of a similar pending state court action, the Court has the authority to grant declaratory relief. *Id.* Accordingly, the Court turns to whether to exercise its jurisdiction over this declaratory judgment action.

### iii.   Propriety of Declaratory Relief

Under the third step set forth in *Orix Credit Alliance*, a district court faced with an action for declaratory relief must determine whether to exercise or decline jurisdiction.

The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should consider several important factors: (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether

possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

The record before the Court weighs in favor of resolving Plaintiff's request for declaratory relief. There is no evidence of a parallel state court action. In addition, fairness weighs in favor of granting default judgment, and a declaratory judgment would further judicial efficiency. A declaratory judgment in this case will settle the question of the parties' respective right, title, and interest in the Property.

### 2. Attorney's Fees

Texas law applies to an award of attorney's fees in diversity cases such as this one, *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, attorney's fees may be recovered under mortgage contracts. *See Richardson v. Wells Fargo Bank, Nat'l Ass'n*, 740 F.3d 1035, 1040 (5th Cir. 2014); *Santry v. Ocwen Loan Servicing LLC*, No. 3:23-cv-649-K-BN, 2024 WL 4229990, at *9 (N.D. Tex. Sept. 3, 2024).

Here, the Note and the Deed of Trust provide for the recovery of attorney's fees in connection with efforts to enforce the Loan Agreement. The Note states that "the Note Holder will have the right to be paid back by [the borrower] for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law[.] Those expenses include, for example, reasonable attorneys' fees." Pl. Comp. Exhibit A (ECF No. 1-1 at 3). The Deed of Trust likewise states that "Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses

14

which either may incur . . . ." including "foreclosure fees and costs arising from the foreclosure of the property." Pl. Comp. Exhibit B (ECF No. 1-1 at 18). The Deed of Trust also provides that in the event of a foreclosure of the lien, trustee shall apply the proceeds of the sale to (but not limited to) attorneys' fees. *Id*.

Because it is permitted in the Note and the Deed of Trust, Wells Fargo is entitled to its reasonable attorneys' fees for pursuing its claim for nonjudicial foreclosure. *See TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 3:14-cv-2589-M-BN, 2016 WL 2856006, at *4 (N.D. Tex. Apr. 18, 2016).

Plaintiff requests that the award of attorneys' fees be made not as a money judgment against Defendants, but as a further obligation owed under the Loan Agreement. Pl. Motion ECF No. 17 at 6. Wells Fargo shall file a separate application for attorneys' fees, no later than 14 days after entry of judgment in this case, that establishes the amount of the reasonable and necessary attorneys' fees and costs that it has incurred, with supporting evidence, based on an acceptable method for calculating attorneys' fees under the Loan Agreement.

**CONCLUSION**

For the foregoing reasons, Wells Fargo's motion for default judgment (ECF No. 17) is **GRANTED**. A final judgment in favor of Plaintiff shall issue in accordance with Rule 58.

Plaintiff is awarded attorneys' fees and costs and shall file an application for attorneys' fees and a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

15

**SIGNED** this 7th day of May 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE